Helen Corrine Scales TRICE, Executrix
Under the Will of Joe W. Scales,
Deceased, Plaintiff-Appellant,

v.

COMMERCIAL UNION ASSURANCE
COMPANY, Ltd., et al., Defendants-
Appellees.

COMMERCIAL UNION ASSURANCE
COMPANY, Ltd., et al., Cross-
Plaintiffs-Appellants,

v.

Helen Corrine Scales TRICE, Executrix
Under the Will of Joe W. Scales,
Deceased, Defendant-Appellee.

Nos. 17871, 17872.

United States Court of Appeals
Sixth Circuit.

July 18, 1968.

Fyke Farmer, Nashville, Tenn., for Trice.

William B. Cain, Columbia, Tenn., for Commercial Union Assurance Co. and others, Lon P. MacFarland, Columbia, Tenn., Joe W. Henry, Jr., Pulaski, Tenn., D. C. Lee, Pulaski, Tenn., on the brief.

Before WEICK, Chief Judge, McCREE, Circuit Judge, and McALLISTER, Senior Circuit Judge.

WEICK, Chief Judge.

This case is before us a second time.[1] The prior proceedings in this action as well as the facts of the case are adequately detailed in the published opinions of the District Court and this Court, and will not be repeated except where necessary for clarity.

Upon remand to the District Court following our decision on the first appeal, plaintiff's action on fire insurance policies was retried before another jury which was unable to agree on the issue of arson but did find in favor of the insurers on the issue of fraud, false swearing and wilful misrepresentation in the proof of loss, and returned a verdict in favor of the defendants and assessed a statutory penalty against Scales' executrix in the amount of $5,000 for bad faith in bringing the suit.

The District Court decided in favor of Scales' executrix on the insurers' counterclaim based on subrogation and assignment, growing out of the insurers' payment of the mortgage indebtedness under the standard mortgage clauses in the policies. It was the view of the Court that upon payment by the insurers, the mortgage indebtedness was discharged and hence Scales' estate was not liable to pay interest.

The present appeals were taken by the executrix and the insurers to review the judgment of the District Court.

The executrix contends that we erred in our decision on the first appeal in holding that the District Judge did not abuse his discretion when he granted the motion for a new trial on the ground that the verdict of the jury was manifestly against the great weight of the evidence. The District Judge had also based his ruling on prejudicial misconduct of counsel. The executrix asks us to overturn our decision on the appeal and reinstate the original verdict and judgment in her favor and thus render nugatory the proceedings and judgment of the District Court upon remand. We find no merit in this contention.

This type of relief is available only under extraordinary conditions which do not exist in the present case. Our opinion in the first appeal constitutes the law of the case. General American Life Ins. Co. v. Anderson, 156 F.2d 615 (6th Cir. 1946). See also Wharton v. Hirsch, 348 F.2d 906 (2nd Cir. 1965); Green v. Baltimore & Ohio R. R. Co., 337 F.2d 673 (6th Cir. 1964); Henderson v. United States, 218 F.2d 14, 50 A.L.R.2d 754 (6th Cir.), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955).

The evidence on which the District Judge relied in granting the motion for a new trial is outlined in his compre-

1. Our decision in the first appeal is reported in 6 Cir., 334 F.2d 673 (1964), cert. denied, 380 U.S. 915, 85 S.Ct. 895, 13 L.Ed.2d 801 (1965). We affirmed in part and reversed in part, 213 F.Supp. 675 (M.D.Tenn.1963).

hensive opinion, 213 F.Supp. 675, and it is not necessary for us to detail it here. There is nothing in the record which would warrant a change in our opinion, and we adhere to it.

■ The executrix argues that the District Court erred in denying her motion for a directed verdict on the issue of arson. In considering such a motion the District Court was required to view the evidence, as well as the inferences properly deducible therefrom, in the light most favorable to the defendants. Minton v. Southern Ry. Co., 368 F.2d 719, 720 (6th Cir. 1966).

■ We have reviewed the evidence in this case which is substantially portrayed in the published opinions of the District Court and of this Court. We are of the opinion that it would have been error for the District Court to have directed a verdict in favor of either party to this lawsuit. The disputed facts in this case, including the inferences, required submission of the issue of arson to the jury.

■ In our judgment, there was substantial evidence to support the verdict of the jury in favor of the defendants on the issue of fraud, false swearing and wilful misrepresentation in the proof of loss. This defense was based on a provision contained in all of the insurance policies avoiding liability where such practices are resorted to. The provision seems to be a common one in insurance contracts. The Tennessee courts have long recognized that an insured's recovery on an insurance contract may be barred by a violation of the provision. See e. g. Columbia Horse & Mule Comm'n Co. v. American Ins. Co., 173 F.2d 773 (6th Cir. 1949); Renner v. Firemen's Ins. Co., 136 F.Supp. 114 (E.D.Tenn.1955); Dossett v. First Nat'l Fire Ins. Co., 138 Tenn. 551, 198 S.W. 889 (1917); Boston Marine Ins. Co. v. Scales, 101 Tenn. 628, 49 S.W. 743 (1899).

■ We do not agree with appellant that the District Court in its charge to the jury allowed the jury to reach its verdict by a "process of pyramiding of inferences." The Court did charge the jury:

"The knowledge or lack of knowledge as well as the intention or lack of intention on the part of Scales can only be inferred from all of the relevant circumstances in the case. Now this presents questions of fact for your determination."

This instruction was taken from our opinion in the first appeal, id., 334 F.2d 676. Under Tennessee law, "A fact may be inferred from circumstantial evidence and such fact may be the basis of a further inference to the ultimate or sought for fact." Stinson v. Daniel, Tenn., 414 S.W.2d 7 (1967).

■ There was no error in the admission into evidence of a contemporaneous fraud practiced by Scales on an insurer of grain alleged to be stored in the bins covered by defendants' insurance policies on the building. This evidence was admitted for consideration by the jury in determining knowledge or intent. Summers v. Howland, 61 Tenn. 407, 409 (1873). The Court was careful to point out to the jury the only purpose for which this evidence could be considered.

■ The penalty assessed by the jury was within the permissible limits of the statute. T.C.A. 56–1106.

The remaining question in the case relates to the liability of Scales' estate on the subrogation claim of the insurance companies.

Scales purchased the mill from L. E. Hewgley Seed Company, Inc., subject to mortgage indebtedness thereon in the amount of $40,000. In the deed to Scales it was specifically provided that he did not assume or agree to pay the mortgages and was merely purchasing the equity of the grantor in the property.

Shortly after purchasing the property an extension agreement was entered into between Scales, the mortgagees and the principal debtor, Hewgley, whereby the mortgagees agreed to extend the time of payment of the mortgage debt for an

additional five-year period payable $8,000 per year with the first payment due October 22, 1956, and final payment due October 22, 1960, in consideration for which Scales agreed to pay the first installment of $8,000 due October 22, 1956, and monthly interest · on the remaining indebtedness of $32,000. In the event the payments were not made when due, the mortgagees had the option to declare the entire balance due.

Following the death of Scales in May, 1959, the mortgagee bank enforced its banker's lien against Scales' bank account and collected $13,143, representing the $8,000 principal payment for which he was obligated and interest on the entire debt to that date. At the time suit was instituted on the insurance policies in the District Court the total amount of the mortgage debt was figured at $48,000, representing $32,000 plus interest, plus $10,000 attorneys' fees. Settlement of their claims under the standard mortgage clauses was made by the mortgagees with the insurance companies, by which settlement the mortgagees received $32,962.50, leaving a balance unpaid on the mortgage debt of $16,000. The notes and mortgages were assigned to the insurance companies. The mortgagees agreed to and did bid $16,000 for the mill property at foreclosure sale, and acquired the property for that amount. In this manner the mortgagees received full payment of their mortgages and, in addition, $10,000 charged by their attorney which became part of the mortgage indebtedness.

The insurers claim that Scales' estate is liable for the payment of interest on $32,000 from May, 1959 to the present date. Their theory is that, under the provisions of the standard mortgage clause in the policies, the insurers were liable to the mortgagees for the fire damage even though they had a defense under the policies of insurance against the owner of the property and, upon payment of their liability and assignment to them of the notes and mortgages, they were subrogated to the rights of the mortgagees against the owner.

The District Judge was of the opinion that the settlement agreement between the mortgagees and the insurance companies, followed by the payment of $32,962.50 and the liquidation of the mortgage security, operated to extinguish the mortgage indebtedness and to release not only the principal debtor, Hewgley, but also Scales who had agreed to pay interest only on the principal obligation. We are of the opinion that Scales' estate is not liable, but for a different reason.

 Hewgley was the principal debtor. The insurance companies asserted no defense against him. Scales assumed no part of the principal debt except $8,000 which was paid out of his bank account. Scales was liable only for the payment of interest.

The insurance companies assert that the only way Scales could relieve himself from liability for interest is to pay the principal obligation of Hewgley amounting to $32,000, for which he was not liable. Under this contention Scales would be liable for the payment of interest indefinitely if Hewgley did not pay the debt for which he alone was liable. But Scales never agreed to pay the principal debt. Yet under the insurers' contention he would be compelled to pay the principal to relieve himself of liability for the interest.

In our opinion the settlement agreement is not clear and unambiguous. It does not state how long Scales was to pay interest. It can be interpreted to mean that Scales was to pay interest until Hewgley paid the principal, as the insurers claim. However, a more reasonable interpretation, and the one which we are inclined to adopt, is that Scales agreed to pay interest during the five-year period the mortgage debt was extended.

 Where an agreement is susceptible of two different interpretations, of which one is reasonable and the other is unreasonable, the reasonable one will be adopted. Turner v. Zager, 50 Tenn. App. 674, 363 S.W.2d 512 (1962); E. O. Bailey & Co. v. Union Planters Title Guar. Co., 33 Tenn.App. 439, 232 S.W.2d

309 (1949). Under this interpretation no interest could be collected after October 22, 1960.

Affirmed.